IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLYDE EVANS PARKER,           §
a/k/a Clyde Dale Evans,       §
a/k/a Clyde Dale Evans Parker §
                              §
VS.                           §  CIVIL ACTION NO.4:06-CV-269-Y
                              §
DEE ANDERSON, Sheriff,        §
Tarrant County, Texas, et al. §

ORDER GRANTING MOTIONS TO DISMISS and,
RELIEVING APPOINTED COUNSEL OF ANY FURTHER REPRESENTATION

Now pending before the Court are the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Clyde Evans Parker ("Parker") named as defendants John Peter Smith Hospital ("JPS"), several doctors and medical personnel of JPS, and numerous officials associated with the Tarrant County jail. Before the Court is the combined motion under Rule 12(b)(6) of Sheriff Dee Anderson, Cedric Simon, Mary Hendrix, Amy Ferrell, and John Murphy ("the Tarrant County defendants"); the combined motion of Officers Reginald Washington and Officer Donald Mitchell; the motion of JPS; the motions of defendants Eric Wroten, M.D., Brian Keith Blair, M.D., Michael Ampelas, D.O., R. William Junius, M.D., and Warren Butterfield, M.D.; and the motion of Lieutenant Darrell Clements. Each of the motions is supported by a brief, and several are also accompanied by an appendix in support. Parker has filed responses to the motions. After review and consideration of the motions, the Court concludes that they should be granted.

Plaintiff Parker's pleadings subject to the Court's review are his original form complaint with handwritten attachment pages and a handwritten more definite statement filed in response to this Court's order, with exhibits attached thereto.[1] Plaintiff also filed a document entitled "amended complaint," which, because it merely clarifies the identity of three defendants, is construed as a supplemental complaint. By these pleadings, Parker asserts claims against the defendants for violation of his federal constitutional rights through 42 U.S.C. § 1983.[2]

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is generally viewed with disfavor.[3] The court must accept all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[4]  Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that

---

[1]In addition to responding to the Court's questions, the November 9, 2006, more definite statement consists of additional allegations and lists new defendants throughout a total of twenty pages, plus exhibits. Although Parker numbered the first few pages, and then began re-numbering the pages after his new allegations, because the document is one complete filing, the Court will refer to the text of the more definite statement by referring to page numbers 1-20, beginning with the first page.

[2]Although defendants JPS and the individually named medical-care providers assert that Parker has failed to state a claim under the Texas Tort Claims Act, Parker acknowledges in his responses that he has not asserted a claim under that law.

[3]*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).

[4]*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

the pleader is entitled to relief."[5] The court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion.[6] A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal.[7] In other words, he must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[8]

*EXHAUSTION*

Several of the defendants seek dismissal on the basis that Parker's claims are barred because he failed to demonstrate exhaustion of administrative remedies within the Tarrant County jail. The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to

---

[5]FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).

[6]*Baker*, 75 F.3d at 196; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert. den'd,* 530 U.S. 1229 (2000).

[7]*Schultea v. Wood,* 47 F.3d 1427, 1431 (5th Cir. 1995)(en banc); *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

[8]*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007)(abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief").

prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[9] In *Booth v. Churner,* 532 U.S. 731 (2001), the Supreme Court held that Congress intended a prisoner to invoke whatever administrative grievance remedies are available within a jail or prison, without regard to whether the grievance procedure affords money-damage relief, before he may file suit contesting prison conditions in federal court.[10] The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[11] Further, exhaustion under the PLRA is mandatory.[12] The Court does not "inquire whether administrative procedures satisfy minimum standards of fairness and effectiveness," prisoners simply "must exhaust such administrative remedies as are available, whatever they may be."[13]

---

[9]42 U.S.C.A. § 1997e(a)(West 2003).

[10]*Booth,* 532 U.S. at 738-41.

[11]*Porter v. Nussle,* 534 U.S. 516, 532 (2002).

[12]*Days v. Johnson,* 322 F.3d 863, 866 (5th Cir. 2003).

[13]*Alexander v. Tippah County, Miss.,* 351 F.3d 626, 630 (5th Cir. 2003)(noting also that it is not for the courts to decide the sufficiency of the administrative procedures but only whether the inmate exhausted such as were available), *cert. den'd,* 541 U.S. 1012 (2004). The Fifth Circuit has expressly rejected an inmate's arguments that he could avoid the application of 1997e(a) based upon substantial compliance:

The Supreme Court recently clarified that a prisoner's failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove.[14] The Court recognized that the affirmative defense of lack of exhaustion, like the defense of statute of limitations, may be the basis of a motion to dismiss for failure to sate a claim if the allegations in the complaint suffice to establish that ground.[15]  Since *Jones,* the Court of Appeals for the Fifth Circuit has noted that the defense must be asserted by a defendant, but noted that, "if the complaint itself makes clear that the prisoner failed to exhaust," a court can dismiss for failure to state a claim.[16]

Plaintiff's complaint alleges that he did completely exhaust his administrative remedies and his more definite statement includes numerous copies of grievances submitted and responses thereto.  The basis of defendants' lack-of-exhaustion arguments, however, is that Parker failed to exhaust his remedies because he

---

But [inmate Wright] did not pursue the grievance remedy to conclusion.  Nothing in the Prison Litigation Reform Act, however, prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems . . . . The PLRA required Wright to exhaust "available" "remedies", whatever they may be. His failure to do so prevents him from pursuing a federal lawsuit at this time.

*Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001).

[14]*See Jones v. Bock,* 127 S.Ct. 910, 921 (2007).

[15]*See Jones,* 127 S.Ct. at 920-21.

[16]*Carbe v. Lappin,* 492 F.3d 325, 328 (5th Cir. 2007).

failed to appeal each grievance to the highest administrative level within the Tarrant County jail. In order to establish this claim, however, the defendants rely upon an affidavit of Executive Chief Deputy Robert Knowles, with 90 pages of documents attached thereto. Included in the attachments are copies of the Tarrant County grievance procedures and the Tarrant County inmate handbook. (Knowles Affidavit at 80-83.) Although defendants acknowledge that the Court must limit itself to review of the pleadings in resolving a motion to dismiss under Rule 12(b)(6), they argue that the Court may take judicial notice of public records. The appendices do include copies of court records of which the Court may properly take judicial notice. The records attached to the Knowles Affidavit, however, are not the kind of public records of which judicial notice can be taken. Rather, they are records of jail procedures and policies and records unique to inmate Parker that are available only when provided to this Court by a Tarrant County official. These documents are not the kinds of records that are judicially noticeable as "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[17] The Court rejects the contention that the inmate grievance forms and responses and the particular Tarrant County grievance procedures and policies, are the kind of public records

---

[17]FED R. EVID. 201(b).

subject to review in support of a 12(b)(6) motion.

Defendants argue that *Collins v. Morgan, Stanley, Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000) stands for the proposition that "documents that a defendant attaches to a [Rule 12(b)(6)] motion are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."[18] They argue that this authority applies to this case. But *Collins* has been labeled a "limited exception" to the rule that documents outside the pleadings cannot be considered under Rule 12(b)(6).[19] Further, the documents that defendants want the Court to consider to establish the lack-of-exhaustion defense are not referred to in Parker's pleadings. Rather, they are separate papers related to Parker's efforts to seek administrative review of his claims. Defendants' reliance on *Collins* to put before the Court copies of Parker's records and copies of the Tarrant County jail policies and inmate handbook is misplaced.

Further, the defendants, in providing the affidavit of Knowles, seek to provide more than records to the Court. In briefing the exhaustion argument, defendants contend that Parker's assertion, in the form complaint, that he exhausted "both steps" of

---

[18]*Collins,* 224 F.3d at 498-99 (5th Cir. 2000).

[19]*Scanlan v. Texas A & M University,* 343 F.3d 533, 536 (5th Cir. 2003) (noting that the plaintiffs' failure in *Collins* to object or appeal the district court's consideration of the documents attached to the motion to dismiss was central to the Court's approval of that practice).

the grievance process, is "false" because Tarrant County policies provided for multiple levels of review. But to establish this point, defendants cite Knowles's testimony. (Tarrant County Defendants' Mot. To Dismiss at 6.) Further, defendants rely upon Knowles's testimony to argue that Parker did not appeal his grievances to the final level of review:

> Jail records show that none of the grievances submitted by Parker in which he complained that he was denied adequate medical care were appealed by him to Sheriff Anderson (above the level of the Grievance Appeal Board) pursuant to the above-referenced procedures while he was an inmate of the Tarrant County Jail. (Knowles Affidavit at 4.)

As many of the defendants seek to provide matters in support of their motions to dismiss under Rule 12(b)(6) outside the pleadings in contravention of Federal Rule of Civil Procedure 12(d), the Court will not consider the Knowles affidavit and attachments thereto. Accordingly, the Court cannot grant dismissal based on Defendants' lack-of-exhaustion arguments.


*NO MUNICIPAL VIOLATION--JPS*

A plaintiff may seek recovery for violation of constitutional rights from a local government under 42 U.S.C. § 1983, but a municipality may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional

tort."[20]  The Supreme Court, in *Monell v. New York City Department of Social Services,* emphasized that a local government entity cannot be held liable under § 1983 on a *respondeat-superior* basis:

> [T]herefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983.[21]

Thus, § 1983 liability attaches "only where the municipality *itself* causes the constitutional violation at issue."[22]

Municipality liability requires "three elements:  policymaker; an official policy; and a violation of constitutional rights "whose 'moving force' is the policy or custom."[23] Official policies are typically contained in ordinances, regulations, or policy statements.[24]  An official policy may also be evident if there is a "'persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute

---

[20]*Monell v. New York City Dept.of Social Services*, 436 U.S. 658, 691 (1978).

[21]*Id.* at 694.

[22]*City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (emphasis in original).

[23]*Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001), *citing Monell,* 436 U.S. at 694.

[24]*Id.* at 579.

a custom that fairly represents municipal policy.'"[25]

Plaintiff Parker has not provided any factual allegations whatsoever of any such policy or custom against JPS. Although Parker asks in his response to JPS's motion to dismiss for the chance to state that the "policies, procedures and/or customs of JPS resulted in the alleged harm," even if these phrases were included in Parker's pleadings, he has not asserted facts about any policies or practices of JPS. Rather, Parker gives facts regarding when he was seen by JPS medical personnel. As Parker has not included factual allegations of any polices and/or practices of JPS associated with these unrelated medical visits, he has not sufficiently alleged liability against JPS.

*NO CONSTITUTIONAL VIOLATION*

In order to assert a claim for damages for violation of federal constitutional rights under 42 U.S.C. § 1983, a plaintiff must set forth facts in support of the required elements of a § 1983 action: (1) that he has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendants deprived him of such right while acting under color of

---

[25]*Id.* (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984)(en banc)).

law.[26] Parker asserts that his rights under the Eighth, Thirteenth and Fourteenth Amendments have been violated. The constitutional rights of a pre-trial detainee flow from the procedural and substantive guarantees of the Fourteenth Amendment.[27] The Fourteenth Amendment protects the detainee's right to be free from punishment prior to an adjudication of guilt.[28] The applicable legal standard in the Fifth Circuit, however, depends on whether the claim challenges a 'condition of confinement' or an 'episodic act or omission.'[29] A condition-of-confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."[30] A claim of episodic act or omission occurs when the "complained-of harm is a particular act or omission of one of more officials."[31] As Parker complains of particular acts and events, his claim are of episodic acts or omissions.

The Fifth Circuit has held that the deliberate-indifference standard normally associated with Eighth Amendment claims also

---

[26]*See West v. Atkins,* 487 U.S. 42, 48 (1988)(citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d 1043, 1050 (5th Cir.), *cert. denied,* 510 U.S. 820 (1993).

[27]*Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525-26 (5th Cir. 1999).

[28]*See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).

[29]*Olabisiomotosho,* 185 F.3d at 526; *see also Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996), *appeal after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998).

[30]*Hare,* 74 F.3d at 644; *see also Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997)(*en banc*)(citing as examples such claims as "the number of bunks in a cell or his television or mail privileges").

[31]*Scott,* 114 F.3d at 53.

applies with respect to claims by pretrial detainees of episodic acts or omissions.[32] Under that standard, an inmate is required to allege facts that indicate officials were deliberately indifferent to his health or safety.[33] A detainee is required to establish that the defendant official has actual subjective knowledge of a substantial risk of serious harm but responds with deliberate indifference to that risk.[34] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants."[35] This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[36]

Parker has named medical personnel, Tarrant County guards, and Tarrant County jail supervisory officials. The Court will address the medical care providers first, as Parker's claims flow from the

---

[32]*Hare*, 74 F.3d at 647-48.

[33]*Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

[34]*Hare,* 74 F.3d at 643 and 650.

[35]*Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

[36]*Farmer,* 511 U.S. at 837; *see also Hare,* 74 F.3d at 648.

alleged failure to properly treat a broken arm. Parker's
allegations often state "malpractice" or "negligence." Allegations
of negligence are not sufficient to maintain an action under 42
U.S.C. § 1983.[37] In *Domino v. Texas Department of Criminal Justice,*
the Fifth Circuit discussed the high standard involved in order for
a plaintiff to state deliberate indifference to serious medical
needs:

> Deliberate indifference is an extremely high standard to
> meet. It is indisputable that an incorrect diagnosis by
> medical personnel does not suffice to state a claim for
> deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236,
> 1238 (5th Cir.1985). Rather, the plaintiff must show that
> the officials "refused to treat him, ignored his
> complaints, intentionally treated him incorrectly, or
> engaged in any similar conduct that would clearly evince
> a wanton disregard for any serious medical needs." Id.
> Furthermore the decision whether to provide additional
> treatment "is a classic example of a matter for medical
> judgment." *Estelle*, 429 U.S. at 107. And, the "failure to
> alleviate a significant risk that [the official] should
> have perceived, but did not" is insufficient to show
> deliberate indifference. Farmer, 511 U.S. at 838.[38]

A disagreement of opinion as to the correct medication and/or
medical treatment does not constitute an actionable civil-rights
claim, but at most, a possible claim of medical malpractice

---

[37]*See, e.g., Daniels v. Williams,* 474 U.S. 327, 332 (1986)(concluding that
the constitution "is simply not implicated by a negligent act of an official
causing unintended loss of or injury to life, liberty, or property"); *Davidson
v. Cannon*, 474 U.S. 344, 347-48 (1986)(stating that "lack of due care . . .
simply does not approach the sort of abusive government conduct" which rises to
the level of a constitutional violation); *Feagley v. Waddill,* 868 F.2d 1437, 1440
(5th Cir.1989)("negligence on the part of state officials does not suffice to
make out any due process violation under the Fourteenth Amendment"), *citing
Daniels*, 474 U.S. at 327.

[38]239 F.3d 752, 756 (5th Cir.2001).

addressed under state law.[39]

*Butterfield*

Plaintiff was first seen at JPS on January 10, 2005, after his arrest by City of Fort Worth police officers. The first defendant in Parker's chronology in this suit is physician Warren Butterfield, who acknowledges in his motion to dismiss that he is the "African-American orthopedic doctor" who saw Parker at JPS on January 10, 2005. Parker alleges that after x-rays revealed that the ulna, a bone in his left forearm, was broken in five places, he was examined by Dr. Butterfield. (More Definite Statement ("MDS")at 2.) Plaintiff complains that the doctor did not set a schedule to repair or re-set his left arm, and released him to Fort Worth police without a prescription for pain medication. Plaintiff acknowledges he had already been given Vicodin for pain, and examined by another physician while at JPS. (MDS at 2.) To the extent that Parker alleges that Butterfield should have determined that his arm needed to be re-set or that Butterfield should have given him a pain prescription, he has not stated a claim for deliberate indifference.

Plaintiff's pleadings show that Butterfield was part of a group of physicians that examined and treated Parker at JPS on

_____

[39]*See Estellev, Gamble,* 429 U.S. 97, 107 (1976); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997); *Varnado v. Lynaugh,* 920 F.2d 320,321 (5th Cir. 1991).

January 10. Parker acknowledges that on that date, x-rays were taken of his arm. (MDS at 2-3.) That Butterfield did not prescribe pain medication is of no consequence, as Parker was provided pain medication on orders of another physician. That Butterfield did not set Parker's arm, or schedule him for such an appointment, is at most an allegation of negligence, rather than deliberate indifference. Negligence simply does not amount to a constitutional violation.[40]

*Ampelas*

Parker pleads that he was moved to the Tarrant County jail on January 19, was seen by a "book-in" nurse who informed him that "he would be seen by a doctor soon," but was not seen by a physician until January 25. Parker's allegations against defendant Michael Ampelas, D.O., arise from that January 25 medical visit. Parker contends Ampelas did not take the time to review the medical records or x-rays taken on January 10, did not order new x-rays, and prescribed only ibuprofen or Motrin, to be taken three times a day. (MDS at 2-3; 14.) Parker contends that Ampelas failed to re-set his arm or give him sufficient pain medication. As noted above, an inmate's disagreement with a physician's treatment of him is not sufficient to state a claim of deliberate indifference.

*Wroten*

---

[40]Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999), *cert. den'd,* 528 U.S. 906 (1999); *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

The next medical provider Parker visited who has been named as a defendant is Dr. Eric Wroten. Parker also acknowledges that on February 7, 2005, he saw a physician named Dr. Wagner in the Tarrant County jail medical department. Parker alleges that this doctor did review his x-rays, informed him that his arm was "grossly refractured," ordered Vicodin for his pain, and ordered him to be seen by an orthopedic doctor. (MDS at 14 ¶ 10.) Plaintiff alleges he then saw orthopedic specialist Dr. Wroten on February 8, 2005. Dr. Wroten told Parker that he was going to allow Parker's bone to grow as it was for thirty more days, and rejected Parker's request for him to reset the bone, advising him : "No, the alignment is fine." When Parker asked Wroten for a second opinion, Wroten asked the guard to remove Parker from his office. (MDS at 3 (¶ 3).) Parker alleges that he was subjected to "malpractice/misdiagnosis at the hands of Er. Eric Wroten. But, malpractice is not deliberate indifference. It appears Dr. Wroten examined Parker upon Dr. Wagner's referral. The fact that Wroten did not believe the bone needed to be re-set is at most an assertion of a difference of opinion with Dr. Wagner with regard to medical treatment for Parker. That Wroten asked the guard to have Parker removed when Parker asked for a second opinion does not state any wanton or malicious conduct. Parker has not stated a constitutional violation against Wroten.

*Blair and Junius*

Parker, however, was provided another opinion when he saw orthopedic surgeon Brian Keith Blair, M.D., approximately one month after seeing Dr. Wroten. (MDS at 3(¶ 4).) Once again, Dr. Blair also determined that Parker's arm should be allowed to heal as it was set for thirty more days. Again, Parker alleges that Dr. Blair subjected him to "malpractice and a misdiagnosis." Parker also alleges that R. William Junius, M.D., another orthopedic specialist "contracted to the Tarrant County jail by JPS . . . wrote in his report that Plaintiff'[s] ulnar bone is in perfect alignment and positioning . . . [and] recommends aggressive motion and exercise." Parker also contends that Dr. Junius subjected him to malpractice and misdiagnosis.

Parker contends he later saw a hand specialist at JPS who advised him that his ulnar bone was too short and did not meet his hand and wrist properly. Parker alleges this doctor told him that he needed to have surgery, including a fusion of the ulnar bone to his radius or radial bone. (MDS at 4; 19.) Parker summarily complains that the JPS medical defendants "made extremely bad decisions dealing with the Plaintiff'[s] arm . . . never reset Plaintiff's arm . . . and allowed it to heal incorrectly . . . requiring surgery." (MDS at 19.) Although these allegations continue to state claims of medical malpractice against the medical defendants, Parker has not stated any facts that any of the medical providers treated him with deliberate indifference. Parker's

claims against Dr.'s Blair and Junius must be dismissed.

*Tarrant County Defendants*

Outside of the medical-care providers, Parker's chronology of events related to officials in the Tarrant County jail begins with his allegation that officers Reginald Washington and Donald Mitchell did not timely schedule him for medical care. Parker was transferred into the Tarrant County jail on January 19, 2005, and assigned to the 60-D housing pod. (Compl. § V.) He alleges that neither first shift officer Mitchell nor second shift officer Washington noted his request for medical care in the "pass on book," that each failed to get him scheduled for medical care, and that it was only because another officer scheduled him for medical care that he was seen on January 25, 2005. Thus, Parker's claims against these two defendants amount to an allegation that they delayed his receipt of medical care by several days. But a delay in providing medical care does not give rise to a constitutional violation unless the deliberate indifference of the medical staff results in substantial harm.[41] As noted in the analysis above, however, Parker has not alleged substantial harm, as the physicians who saw him, examined, and treated him, determined that his injury to the bone in his arm did not require the medical care Parker sought.

---

[41]*Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Parker alleges that several supervisory officials associated with the Tarrant County jail violated his rights. His allegations against Dee Anderson, Cedric Simon, Mary Hendrix, Amy Ferrell, John Murphy, and Lieutenant Darrell Clements,[42] however, all concern their roles in the receipt and processing of his letters, complaints, and grievances regarding the alleged failure to timely provide him adequate medical care. By the time of their receipt of such complaints, however, Parker had been seen by defendant Michael Ampelas, D.O., on January 25, had been examined by Tarrant County jail medical physician Dr. Wagner on February 7, 2005, and had seen orthopedic specialist Dr. Wroten on February 8, 2005. (MDS at 2-4; 14.) Parker acknowledges that Dr. Wagner provided him a Vicodin prescription at the February 7, 2005, examination. (MDS at 14.) Parker complains generally that Anderson, Simon and Hendrix would not meet with him over his complaints, but he acknowledges that the complaints "were referred to the medical department," and that one of his letters to Anderson was responded to by Captain Ferrell. (MDS at 13.) But it is reasonable for supervisory officials to rely upon medical personnel in responding to inmate grievances.[43] Parker

---

[42]Darrell Clements filed a separate motion to dismiss, in which he also seeks dismissal on the basis of no personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and on the basis of insufficient service of process under Federal Rule of Civil Procedure if 12(b)(5). Because the Court determines that Clements is entitled to dismissal under 12(b)(6), it does not reach the alternative arguments for dismissal.

[43]*Pitre v. David Wade Correctional Center*, No. 06-1802, 2008 WL 466160, at *7 (W.D. La. Feb. 14, 2008)(noting that it was reasonable for supervisory prison officials to rely upon medical personnel in responding to grievances.)

has otherwise not alleged the personal involvement by any of these Tarrant County officials in actually delaying him or preventing him from receiving medical care. But personal involvement is an essential element of a civil-rights cause of action, requiring a plaintiff to allege facts that each defendant actively participated in the complained-of events or implemented an unconstitutional policy that results in injury.[44] As plaintiff Parker's allegations against these Tarrant County officials do not show any active involvement in the alleged delay or denial of adequate medical treatment, he has not stated a claim against them.

Furthermore, with regard to Parker's allegations that these defendants failed to timely or adequately respond to his grievances, such allegations cannot support a constitutional violation. As the Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers:* "[An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless."[45] Thus,

---

[44]*Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983), *cert. den'd*, 464 U.S. 897 (1983); *Mouille v. City of Live Oak, Texas,* 977 F.2d 924, 929 (5th Cir. 1992), *cert. den'd,* 508 U.S. 951 (1993).

[45]*Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D.Tex. March 15, 2002)("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation."), *citing Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994), *cert. den'd,* 514 U.S. 1022 (1995) and *Antonelli v. Sheahan*, 81 F.3d

20

Parker's claims against defendants Anderson, Simon, Hendrix, Murphy, Ferrell, and Clements must be dismissed.

With regard to defendant Anderson, Parker also alleges that as Tarrant County jail guards and other officials act under the supervision of Anderson, he is responsible for their actions. But a plaintiff may not maintain a suit under 42 U.S.C. § 1983 based solely upon the actions of subordinates under *respondeat superior* or vicarious liability.[46] Thus, Parker cannot maintain a claim against Anderson based purely on the actions of Tarrant County jail employees.

Parker also alleges that Anderson is responsible for failing to properly train officers Mitchell and Washington, and is thus liable on this basis. To establish liability under § 1983 on a failure-to-train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights."[47] Parker alleges that as Anderson oversaw the training of these officers, he was liable when

---

1422 (7th Cir.1996).

[46]*See Alton v. Texas A & M University,* 168 F.3d 196, 200 (5th Cir.1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979).

[47]*Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005).

the officers failed to timely refer him to medical. But as the Court has already determined that Parker's claims against these officers does not allege a constitutional violation, Anderson cannot be said to be liable based on a failure to train associated with their actions, as his factual allegations do not support the second or third elements of a failure-to-train claim.

Therefore, the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) of the following persons and entities are GRANTED: Tarrant County defendants Dee Anderson, Cedric Simon, Mary Hendrix, John Murphy, and Amy Ferrell [docket no. 25]; John Peter Smith Hospital [docket no. 28]; Eric Wroten, M.D. [docket no. 34]; Brian Keith Blair [docket no. 37]; Donald Mitchell and Reginald Washington [docket no. 49]; Warren Butterfield, M.D. [docket no. 81]; R. William Junius, M.D. [docket no. 85]; and Michael Ampelas, D.O. [docket no. 90].

Lieutenant Darrell Clements's motion to dismiss under Rule of Civil Procedure 12(b)(6) [docket no. 99] is GRANTED, but his motion under Rules of Civil Procedure 12(b)(2) and 12(b)(5) is DISMISSED as moot.

All of Plaintiff's claims against Dee Anderson; Cedric Simon; Mary Hendrix; John Murphy; Amy Ferrell; Eric Wroten, M.D.;[48] Brian

---

[48]Defendant Wroten's first name is spelled as "Eric," "Erik," and "Erick" in different filings, but this dismissal applies however his first name is spelled.

Keith Blair, M.D.; Donald Mitchell; Reginald Washington; Warren Butterfield, M.D.; R. William Junias, M.D.;[49] Michael Ampelas, D.O.; Darrell Clements; and John Peter Smith Hospital are DISMISSED WITH PREJUDICE.[50]

SIGNED March 31, 2008.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[49]Defendant's last name is spelled as "Junius" and "Junias" in different filings, but his dismissal applies however this defendant's last name is spelled.

[50]On April 12, 2007, this court appointed counsel under 28 U.S.C. § 1915(e)(1) for plaintiff Parker for this and two other cases pending before this Court, and expressly directed Parker to not seek representation for "any other matters." As this order resolves the claims against all defendants in this case, counsel for plaintiff, Sydney Hewlett, and Shannon, Gracey, Ratliff and Miller, 777 Main Street, Suite 3800, Fort Worth, Texas are expressly relieved of the appointment and of any further representation of Parker for this case or any appeal therefrom. Should Parker seek to file a notice of appeal as a pro se party, he is advised that the time to file a notice of appeal is set forth in Federal Rule of Appellate Procedure 4(a)(1)(A).